UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

TUFAMERICA, INC. d/b/a TUFF CITY RECORDS,      :

        Plaintiff,      :      Civil No.:  06-CV-15388 (LBS)

      - against -      :

ROC-A-FELLA RECORDS, INC., ROC-A-FELLA      :
RECORDS, LLC, UMG RECORDINGS, INC. and
UNIVERSAL MUSIC GROUP, INC.,      :      **THIRD-PARTY COMPLAINT**

       Defendants.      :
------------------------------------------------------------------------X
ROC-A-FELLA RECORDS, LLC and UMG      :
RECORDINGS, INC.

      Third-Party Plaintiffs,      :

     -against-      :

BUN BUN MUSIC, INC.,      :

      Third-Party Defendant.      :
------------------------------------------------------------------------X

     Defendants and third-party plaintiffs Roc-A-Fella Records, LLC and UMG Recordings,

Inc. (collectively, "Third-Party Plaintiffs"), by their attorneys, Jenner & Block LLP, for their

Third-Party Complaint against third-party defendant Bun Bun Music, Inc. ("Bun Bun") state as

follows:

**THE PARTIES**

    1.    Third-Party Plaintiff Roc-A-Fella Records LLC is a limited liability company

organized and existing under the laws of the State of New York, and transacts business in this

District.

    2.    Third-Party Plaintiff UMG Recordings, Inc. is a corporation organized and

existing under the laws of the State of Delaware and transacts business in this District.

15935.4

3.      Upon information and belief, third-party defendant Bun Bun Music, Inc. is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 11 Bruckner Boulevard, Third Floor, Bronx, New York 10454, and does business in New York.

4.      On or about December 22, 2006, Plaintiff TufAmerica, Inc. d/b/a Tuff City Records ("TufAmerica") filed a complaint (the "TufAmerica Complaint") against Third-Party Plaintiffs asserting claims for copyright infringement.  A copy of the TufAmerica Complaint is attached hereto as "Exhibit A."

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 2201 because the claims alleged in the TufAmerica Complaint, which form the basis for this third-party complaint (the "Third-Party Complaint") arise under the Copyright Laws of the United States, Title 17 of the United States Code.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because Bun Bun resides in this District and a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## BACKGROUND FACTS

7.      Third-Party Plaintiffs are companies in the business of, *inter alia*, recording, manufacturing, producing, selling, distributing and/or marketing sound recordings.

8.      In 2003, Third-Party Plaintiffs commercially released an album titled "The Chain Gang, Volume 2" (the "Album") which contained a sound recording entitled "Criminal Background" performed by Peedi Crakk and Young Chris (the "UMG Recording").

9.      The UMG Recording contained a sample of the sound recording "Criminal Minded" performed by "BDP" (the "Sample").

10.     In order to obtain the rights to use the Sample in the UMG Recording, Third-Party Plaintiffs entered into an agreement dated as of June 27, 2003 with Bun Bun pursuant to which Bun Bun licensed the Sample to Third-Party Plaintiffs for use in the UMG Recording (the "License Agreement").  A copy of the License Agreement is hereto attached as "Exhibit B."

11.     Pursuant to Paragraph 3 of the License Agreement, Bun Bun granted to the Third-Party Plaintiffs the "right to embody the Sample in the Master, [and] to exploit the Sample as embodied in the [UMG Recording] for the full terms of copyright."

12.     Further, in Subparagraph 9.1 of the License Agreement Bun Bun represented, warranted and agreed that it "has obtained any and all consents and permissions necessary for [Bun Bun] to license for [Third-Party Plaintiffs] as provided herein and for [Third-Party Plaintiffs] to exploit the Sample as contemplated herein."

13.     In addition, in Subparagraph 9.2 of the License Agreement Bun Bun represented, warranted and agreed that, it "has the right to enter into the Agreement and grant to [Third-Party Plaintiffs] each and all of the rights granted herein and [Third-Party Plaintiffs are] acquiring same free and clear of any encumbrances or liens of any kind or nature, or claims or demands of any kind or nature, by any other third party(ies) whatsoever."

14.     Finally, Paragraph 11 of the License Agreement requires Bun Bun, *inter alia*, "to indemnify [Third-Party Plaintiffs] and undertake to hold harmless of and from any and all costs and expenses (including but not limited to reasonable attorneys fees and court costs) losses, claims, liabilities or obligations arising out of or connected with any breach by [Bun Bun] of any agreements, representations or warranties made by [Bun Bun] hereunder."

15935.4

15.     On or about December 22, 2006, TufAmerica filed the TufAmerica Complaint against Third-Party Plaintiffs asserting claims against the Third-Party Plaintiffs for copyright infringement arising from the release of the Album which contained the UMG Recording.

16.     TufAmerica alleges that the UMG Recording contains a sample of its musical composition and sound recording "Let's Get Small" (the "TufAmerica Recording").

17.     TufAmerica contends that the Sample that the Third-Party Plaintiffs licensed from Bun Bun contains an unauthorized sample of the TufAmerica Recording.  TufAmerica further contends that when Third-Party Plaintiffs incorporated the Sample in the UMG Recording, it therefore used an unauthorized sample of the TufAmerica Recording.

18.     Third-Party Plaintiffs used the Sample in the UMG Recording in reliance on the foregoing representations and warranties of Bun Bun.  Accordingly, if the allegations in the TufAmerica Complaint are true, then they represent a material breach by Bun Bun of the agreements, warranties and representations it made in the License Agreement.

## COUNT I -- CONTRACTUAL INDEMNIFICATION

19.     Third-Party Plaintiffs repeat and reallege their responses to paragraphs 1 through 18 of the Third-Party Complaint as if fully set forth herein.

20.     Third-Party Plaintiffs' contractual rights against Bun Bun are set forth in the License Agreement.

21.     The License Agreement is a valid and enforeceable agreement.

22.     Pursuant to the terms of the License Agreement, Bun Bun warranted and represented, *inter alia*, that it obtained any and all consents and permissions necessary for it to license Sample to Third-Party Plaintiffs to exploit in the UMG Recording and that it acquired the

4

rights granted in the License Agreement free and clear of any encumbrances or liens of any kind or nature, or claims or demands of any kind or nature.

23.    Pursuant to Paragraph 11 of the License Agreement, Bun Bun has a contractual obligation to indemnify Third-Party Plaintiffs against any and all costs and expenses incurred as a result of any breach by Bun Bun of its agreements, representations or warranties under the License Agreement.

24.    If Third-Party Plaintiffs are found to be liable to TufAmerica for the claims asserted in the TufAmerica Complaint, Third-Party Plaintiffs' liability would be a direct and proximate result of the material breach of the covenants, representations and warranties made by Bun Bun in License Agreement.

25.    As such, Bun  Bun must indemnify Third-Party Plaintiffs for any and all liability, costs and expenses (including but not limited to reasonable attorneys fees and court costs) incurred by Third-Party Plaintiffs in connection with defense against the TufAmerica Complaint.

WHEREFORE, Third-Party Plaintiffs respectfully request that the Court:

A.    Award Third-Party Plaintiffs damages in the amount of any and all costs and expenses (including, but not limited to reasonable attorneys fees and court costs), losses, claims, liabilities or obligations arising out of or connected with their defense against the TufAmerica Complaint and breach of the License Agreement;

B.    Award Third-Party Plaintiffs their reasonable costs and attorneys' fees incurred in having to defend this action, pursuant to 17 U.S.C. § 505; and

C.    Award Third-Party Plaintiffs such other and further relief as the Court deems just and proper.

5

15935.4

## JURY DEMAND

Third-Party Plaintiffs demand trial by jury on all claims in this Third-Party Complaint.


Dated:  New York, New York
        March 14, 2008

                                        JENNER & BLOCK LLP

                                        By: _____
                                            Andrew H. Bart
                                            Carletta F. Higginson
                                        919 Third Avenue, 37th Floor
                                        New York, New York  10022
                                        (212) 891-1600

                                        *Attorneys for Defendants and Third-Party Plaintiffs*
                                        *Roc-A-Fella Records, LLC and UMG Recordings,*
                                        *Inc.*

6

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TUFAMERICA, INC. d/b/a
TUFF CITY RECORDS ,

    Plaintiff,

-against-

ROC-A-FELLA RECORDS, INC., ROC-A-FELLA
RECORDS, LLC, UMG RECORDINGS, INC. and
UNIVERSAL MUSIC GROUP, INC.

    Defendants.

**JUDGE SAND**

06 CV 15388

Civil Action No.

**COMPLAINT and
JURY DEMAND**

Plaintiff TufAmerica Inc. d/b/a Tuff City Records by its attorneys Troutman Sanders

LLP, HEREBY COMPLAINS OF Defendants Roc-A-Fella Records, Inc., Roc-A-Fella Records,

LLC, UMG Recordings, Inc. and Universal Music Group, Inc. as follows:

### Nature of Action and Subject Matter Jurisdiction

*1.*     This complaint alleges a cause of action under the Copyright Laws of the United

States, Title 17 of the United States Code.  Jurisdiction exists over this action pursuant to

28 U.S.C. §§ 1331, 1338 and 2201.

### Personal Jurisdiction and Venue

*2.*     Plaintiff TufAmerica, Inc. d/b/a Tuff City Records (hereinafter "Plaintiff" or

"Tuff City"), is a corporation organized and existing under the laws of the State of New

York.

**Page 1 of 8**

NEWYORK01 1158762v2 040593-TBA

3.     Upon information and belief, defendant Roc-A-Fella Records, Inc. is a corporation organized and existing under the laws of the State of New York, and transacts substantial business in this judicial district.

4.     Upon information and belief, defendant Roc-A-Fella Records, LLC. is a corporation organized and existing under the laws of the State of New York, and transacts substantial business in this judicial district.

5.     Upon information and belief, defendant UMG Recordings, Inc. (hereinafter "UMG") is a corporation organized and existing under the laws of the State of California. Upon information and belief, UMG is registered to do business in this judicial district, maintains a place of business at 1755 Broadway, New York, New York, and transacts substantial business in this judicial district.

6.     Upon information and belief, defendant Universal Music Group, Inc. (hereinafter "Universal") is corporation organized and existing under the laws of the State of Delaware.  Upon information and belief, Universal is registered to do business in this judicial district, maintains a place of business at 1755 Broadway, New York, New York, and transacts substantial business in this judicial district.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

### Facts Common to All Causes of Action – Nature of the Action

8.     Upon information and belief, Robert Reed ("Reed"), Tony Fisher ("Fisher") and James Avery ("Avery") performed as a musical group known as Trouble Funk.

**Page 2 of 8**

NEWYORK01 1158762v2 040593-TBA

9.      Upon information and belief, in 1982, Reed, Avery and Fisher created the musical composition "*Let's Get Small*" (the "Composition").

10.     Upon information and belief, in 1982, Reed, Avery and Fisher, performing as Trouble Funk, recorded the Composition (the "Master Recording").

11.     On or about May 26, 1983, Reed, Avery and Fisher caused to be filed with the U.S. Copyright Office an SR application covering the Composition and Master Recording.

12.     The U.S. Copyright Office issued SR 45-535 covering the Composition and Master Recording.

13.     Upon information and belief, Reed, Avery and Fisher were the sole authors of the Composition and the Master Recording.

14.     On or about December 20, 1999, Reed, Avery and Fisher assigned to Tuff City their copyright interests in and to, *inter alia*, the Composition and Master Recording (the "Assignment").

15.     At all times since December 20, 1999, Tuff City has been the owner of the Composition and Master Recording.

16.     On or about February 20, 2000, Tuff City recorded the Assignment with the United States Copyright Office at Volume 3443 p. 51-52.

**Page 3 of 8**

NEWYORK01 1158762v2 040593-TBA

*17.*      Upon information and belief, Defendants released an album titled "*The Chain Gang, Volume 2*" (hereinafter the "Album") recorded by the musical group known as "State Property."

*18.*      Upon information and belief, the Album contains a recording titled "*Criminal Background*" (hereinafter, the "First Infringement"), performed by the artists known as Peedi Crakk and Young Gunz.

*19.*      Upon information and belief, the First Infringement contains a digital sample of the Master Recording.

*20.*      Upon information and belief, at all times relevant, Defendants have reproduced manufactured, distributed, sold, conveyed to the public and otherwise exploited the Album and First Infringement throughout the United States.

*21.*      Upon information and belief, Defendants have collected sums of money as a result of their exploitation of the Album.

*22.*      Upon information and belief, Defendants have collected sums of money as a result of their exploitation of the First Infringement.

*23.*      Upon information and belief, Defendants have licensed to third parties the right to exploit the First Infringement.

**Page 4 of 8**

### As and For a First Cause of Action:
### COPYRIGHT INFRINGEMENT

24.     To the extent applicable, Tuff City incorporates by reference the allegations of the foregoing paragraphs hereof as though fully set forth herein.

25.     This cause of action arises under the United States Copyright Act 17 U.S.C. § 101 *et seq.*

26.     Upon information and belief, there is substantial similarity and/or fragmented literal similarity between the First Infringement and the Composition.

27.     Upon information and belief, through the foregoing conduct, Defendants have infringed Tuff City's copyright in and/or to the Composition.

28.     Upon information and belief, defendants engaged in the foregoing conduct with knowledge of Tuff City's copyright interests.

29.     Upon information and belief, Defendants engaged in the foregoing conduct despite Tuff City's request that defendant cease such conduct.

30.     Tuff City has been harmed by Defendants' infringement and abridgment of Tuff City's copyright interests.

31.     Upon information and belief, Defendants are likely to continue infringing Tuff City's copyrights unless they are enjoined from further infringement.

NEWYORK01 1158762v2 040593-TBA

*32.*     Upon information and belief, as a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Tuff City in an amount to be determined at trial.

*33.*     Upon information and belief, Defendants have willfully engaged in, and continue to willfully engaging in, the acts complained of with oppression and in conscious disregard of the rights of Tuff City.

### As and For a Second Cause of Action:
### COPYRIGHT INFRINGEMENT

*34.*     To the extent applicable, Tuff City incorporates by reference the allegations of the foregoing paragraphs hereof as though fully set forth herein.

*35.*     This cause of action arises under the United States Copyright Act 17 U.S.C. § 101 *et seq.*

*36.*     Upon information and belief, there is substantial similarity and/or fragmented literal similarity between the First Infringement and the Master Recording.

*37.*     Upon information and belief, through the foregoing conduct, Defendants have infringed Tuff City's copyright in and/or to the Master Recording.

*38.*     Upon information and belief, Defendants engaged in the foregoing conduct with knowledge of Tuff City's copyright interests.

**Page 6 of 8**

39.    Upon information and belief, Defendants engaged in the foregoing conduct despite Tuff City's request that defendant cease such conduct.

40.    Tuff City has been harmed by Defendants' infringement and abridgment of Tuff City's copyright interests.

41.    Upon information and belief, Defendants are likely to continue infringing Tuff City's copyright interests unless they are enjoined from further infringement.

42.    Upon information and belief, as a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Tuff City in an amount to be determined at trial.

43.    Upon information and belief, Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, and in conscious disregard of the rights of Tuff City.

**WHEREFORE**, Tuff City prays for relief and respectfully request that the Court:

(a)    Permanently enjoin Defendants, their officers, directors, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with Defendants from copying or otherwise exploiting or otherwise infringing upon Tuff City's copyrights or other rights in any manner;

(b)    Order Defendants to account to Tuff City for all gains, profits, and advantages derived by Defendants by their infringement of Tuff City's copyrights;

**Page 7 of 8**

(c)   Declare Defendants willful infringers of Tuff City's copyrights;

(d)   Award to Tuff City:

    (1)   damages and lost profits for all copyright infringements, or statutory damages if Tuff City so elects;

    (2)   full costs for this action, including reasonable attorney fees; and

    (3)   prejudgment and post judgment interest on all sums.

    (4)   Any further relief as justice may require, or as this Court deems necessary.

## DEMAND FOR JURY TRIAL

Plaintiff Tufamerica, Inc. d/b/a Tuff City Records hereby requests a jury trial for all claims as provided for in Federal Rule of Civil Procedure 38.

Respectfully submitted,

**TROUTMAN SANDERS LLP**

By: _____

Oren J. Warshavsky  (OW 9469)
Lauren D. Friedman (LF 8790)
The Chrysler Building
405 Lexington Avenue
New York, New York  10174
Telephone: (212) 704.6213
Facsimile: (212) 704-8356
e-mail: Oren.Warshavsky@troutmansanders.com

*Attorneys for Plaintiff TufAmerica*

**Dated:**   December _21_, 2006
New York, New York

**Page 8 of 8**

NEWYORK01 1158762v2 040593-TBA

# EXHIBIT B

(Page 1 of 5)

*Fully Executed Sample Agx*
*State Property*

# BuN BuN MUSIC, INC.

*June 27, 2003*

This will confirm the following Agreement dated as of ~~November 7, 2005~~ made between Bun Bun Inc., hereinafter called "Licensor" at 752 East 137th Street, Bronx, New York 10454 and ROC-A-FELLA records LLC, ~~a division of UMG Recordings Inc~~ hereinafter called "Licensee" at 825 Eighth Avenue, New York, New York 10019 with respect to non-exclusive license of certain portions of a Master recording own or controlled by Licensor.

1. The Master recording from which the Sample is taken is criminal minded as performed by "BDP" ("Sample")

2. As used herein "Master" shall be understood to mean the Master Recording of the performance ~~criminal background. State property~~ ~~performed~~ by Peedi Crakk & Young Chris ~~X Sample~~ *of the composition entitl "Criminal Background" which embodies the Sample.*

3. Subject to the terms and conditions hereof, Licensor grants to Licensee the non-exclusive perpetual right to embody the Sample in the Master, to exploit the Sample as embodied in the Master for the full terms of copyright. And, any extensions and renewals thereof, and to manufacture, reproduce, sell and exploit the Sample, solely as part of the Master, and to authorize the same throughout the world, in all configurations now known or hereinafter devised, providing that the Sample may only be used as part of the Master as follows: (i) on records and the equivalent thereof, (ii) on promotional videos of the Master.

   3.1 Licensee shall not have the right to exploit, or authorized the exploitation of the Master except as specifically set forth (eg) without limitation, to use for any so-called Master-use synchronization purposes) without Licensor's prior written consent.

4. For Licensee's continued enjoyment of all the rights granted hereunder as provided herein, Licensee agrees to pay Licensor in respect of each of any records embodying any of the Master(s) at any time sold by Licensee (or it's designee) which have been paid for and not returned, a royalty, as listed in Schedule A.

   4.1 Any records sold to record or book clubs or mail order organizations will be calculated at a royalty rate equal to one half the amount received by Licensee.

5. As referred to herein, "sound recording(s)" and/or "record(s)" shall refer to any configuration of sound recording including by not limited to Phonograph albums, Cassettes and Compact Discs.

(Page 2 of 5)

6.  For the rights granted by Licensor hereunder, Licensee shall pay to Licensor a non-returnable advance, as listed in the attached schedule(s), A which shall be fully recoupable from royalties earned with respect to the sale of the record.

7.  Royalties earned and payables foresaid shall be accounted for and paid within ninety (90) days after the end of each semi-annual calendar period. A certified public accountant, on Licensor's behalf, may at Licensor's sole cost, examine Licensor's books relating to the sale of records embodying the Master(s) but only during Licensor's normal business hours and after reasonable written notice and no more than once in each twelve month period or once with respect to any statement hereunder. Licensee's books and records may be examined only as aforesaid and, to the extent that same relate to any particular accounting period(s) hereunder, only within eighteen months after the date on which the last statement hereunder in respect of such period(s) was rendered.

8.  No royalties shall be due or payable hereunder with respect to any records given away or furnished on a non-profit basis to disc jockeys, radio station, dealers, members of the press hereunder, nor shall any royalties be due or payable hereunder with respect to any records for which Licensee's not paid in full or any records sold for scrap or at salvage or close-out price.

9.  Licensor hereby represents, warrants and agrees that:

    9.1 Licensor has obtained any and all consents and permissions necessary for Licensor to license for Sample(s) Licensee as provided herein and for Licensee to exploit the Sample(s) as contemplated herein.

    9.2 Licensor has the right to enter into the Agreement and to grant to Licensee each and all of the rights granted herein and Licensee is acquiring same free and clear of any encumbrances or liens of any kind or nature or claims or demands or any kind or nature by any other third party(ies) whatsoever.

10. Licensee hereby represents, warrant and agrees that:

    10.1 Licensee's exercise of the rights granted herein will not at anytime infringe upon any common law or statutory rights of any third party(ies) whatsoever, including, without limitation, any contractual rights, copyrights or rights of privacy of any kind or nature nor violate any applicable statute(s), law(s), rule(s), and/or regulation(s) whatsoever.

11. Licensor agrees to indemnity Licensee and undertakes to hold it harmless of and from any and all costs and expenses (including but not limited to reasonable attorneys fees and court costs), losses, claims, liabilities or obligations arising out of or connected with any breach by Licensor of any agreements, representations or warranties made by Licensor hereunder, and pending the final determination of any claim, demand or action against Licensee, Licensee shall have right to withhold hereunder up to it's reasonable estimated exposure and expenses in connection therewith.

12. The Agreement shall be deemed made in the State of New York and it's validity, construction, breach, performance and operation shall be governed in accordance with the laws of the State of New York to Agreements made in and to be performed in New York. Any and all disputes as to the interpretation of any performance under or otherwise in any way in connection with this Agreement shall be determined by arbitration in New York in accordance with the rules of the American Arbitration Association (with full discovery available), subject to the terms provisions hereof. The prevailing party in any such arbitration proceeding (and in any other arbitration proceeding and/or any litigation in any way related to this Agreement), shall be entitled to recover any and all reasonable attorney's fees and any other cost reasonable incurred in connection therewith.

13. Licensee may assign this Agreement to any parent, subsidiary or affiliate entity, or to any financially responsible entity, which acquires substantially, all of Licensee's stock or assets and/or merger, consolidation or other reorganization. Any such assignee (or sub assignee) shall prospectively assume all contractual obligations of assigning party hereunder. This Agreement shall insure to the benefit of and be binding upon each of the parties hereto and their respective successors, permitted assigns, heirs, executors, administrators and legal and personal representatives.

14. This contract sets forth the entire understanding of the parties hereto relating to the subject matter hereof, any and all prior or contemporaneous negotiations, understandings, Agreements, representation, warranties, inducements or the like being superseded by and /or merged into this contract. No modification, amendment, waiver, termination or discharge of this contract or any of the terms or provisions hereof shall be binding upon either party hereto unless confirmed by a written instrument signed by such party's duly authorized representative. No waiver by either party hereto of any term or provision of this contract or of any default hereunder shall affect such party's rights thereafter to enforce such term or provision or to exercise any right or remedy in the event of any other default, whether or not similar.

15. Licensor agrees to promptly execute any further document or documents or amendments which are reasonably necessary or proper to make the substance or intent of this Agreement effective and binding and/or which are reasonably necessary or proper for the performance of any matter herein agreed upon.

16. Licensee shall not be deemed to have permitted the failure of any condition imposed on any of its rights herein or to be in breach of any of its obligations hereunder unless and until Licensor shall have give Licensee specific written notice of the nature of such failure or breach within sixty (60) days after Licensor becomes aware of it's occurrences and Licensee shall have failed to cure same within sixty (60) days after receipt of such written notice.

17. All notices which Licensee or Licensor may require or desire to serve upon Licensor or Licensee shall be in writing and shall be served by sending said notice certified or registered mail, return receipt requested, postage prepaid to addresses of each party as listed below.

18. Upon termination of this Agreement, Licensee shall have a six (6) month sell-off-period to dispose of existing product.

19. Licensor acknowledges that the recording industry is speculative in nature and Licensee makes no guaranty as to how many "records" will be sold as a result of Licensee's release of said "sound recordings."

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year set forth above.

LICENSEE                                                     LICENSOR

Roc-a-Fella ~~a Division of~~ *Records, LLC*      BuN BuN MUSIC INC.
~~UMG Recordings, Inc.~~                             752 E 137th Street
825 8th Avenue                                       Bronx, New York 10454
New York, NY 10019

BY                                                   BY
AN AUTHORIZED SIGNER                                 AN AUTHORIZED SIGNER

NOVEMBER 7, 2005                                     NOVEMBER 7, 2005

## SCHEDULE "A"

This is schedule to and Agreement between BuN BuN Music, Inc. and Roc-A-Fella Records dated November 7, 2005

Territory:                                      US and World

Master(s)                                       ᴬCriminal Background Peedi Crakk
                                                and Young Chris ~~State Property 2~~"

Sample                                          BDP; Criminal Minded

Term:                                           Perpetuity

Royalty:                                        $.03

Advance:                                        $6,000.00

Licensee                                        Licensor
Roc-A-Fella Records
~~Ric-A-Fella, LLC~~                            BuN BuN Music Inc.
~~Island Def Jam~~                              752 E. 137 Street
~~Music Group~~                                 Bronx, New York   10454

BY: _____                             BY: _____
   An Authorized Signer                            An Authorized Signer
   Dated: November 7th 2005                        Dated:  November 7th 2005